# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EVEREST NATIONAL INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. |
| vs. | ) |
| | ) |
| HEALTHCARE REFORM BENEFIT SOLUTIONS, | ) |
| INC., CATHERINE SBARRA, and RECEIVERSHIP | ) |
| MANAGEMENT, INC. in its capacity as the | ) |
| Independent Fiduciary of AEU Holdings, LLC | ) |
| Employee Benefit Plan and Participating Plans, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Everest National Insurance Company ("Everest"), by and through its counsel, submits this Complaint for Declaratory Judgment under U.S.C. §§ 2201 and 2202 against defendants Healthcare Reform Benefit Solutions, Inc., Catherine Sbarra, and Receivership Management, Inc., states as follows:

## NATURE OF ACTION

1. This is an action for declaratory judgment, brought pursuant to U.S.C. §§ 2201 and 2202, seeking a declaration that no coverage exists under an insurance policy issued by Everest.

2. Everest seeks a declaration that it owes no obligation to defend or indemnify Healthcare Reform Benefit Solutions, Inc. or Catherine Sbarra-Hagee in connection with a lawsuit styled *Receivership Management, Inc. in its capacity of the AEU Holdings, LLC Employee Benefits Plan and Participating Plans v. A.J. Corso & Associates, Inc., et al.*, Case No. 1:19-cv-01385, pending in the United States District Court for the Northern District of Illinois ("the AEU Lawsuit").

3. Healthcare Reform Benefit Solutions, Inc. and Catherine Sbarra-Hagee seek coverage from Everest for the AEU Lawsuit. Everest has declined coverage to Healthcare Reform Benefit Solutions, Inc. and Sbarra for the AEU Lawsuit. Accordingly, an actual, justiciable controversy exists between the parties which is ripe for adjudication.

## PARTIES

4. Plaintiff Everest is a Delaware Corporation with its principal place of business in Liberty Corner, New Jersey.

5. Defendant Healthcare Reform Benefit Solutions, Inc. ("HRB") is an Illinois corporation with its principle place of business in Downers Grove, Illinois.

6. Defendant Catherine Sbarra-Hagee ("Sbarra") is the President and Chief Operating Officer of HRB and an Illinois resident.

7. Defendant Receivership Management, Inc. ("RMI") is a Tennessee corporation with its principle place of business in Nashville, Tennessee. RMI was appointed by the United Stated District Court for the Northern District of Illinois as Independent Fiduciary of:

> AEU Holdings, LLC Employee Benefit Plan ("AEU Plan") and all welfare plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, et seq. that are part of or participate in the AEU Plan ("Participating Plans") and their participants who have suffered unpaid claims.

*Acosta v. AEU Benefits, LLC, et al.*, Case No. 1:17-cv-07931, Dkt. 59.

8. RMI is a nominal defendant named as an interested and necessary party to this declaratory judgment action.

## JURISDICTION AND VENUE

9. This court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1), because there is complete diversity between the plaintiff and defendants, and the amount in controversy, exclusive of interest, exceeds $75,000.

10. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because two of the defendants reside in this District and a substantial part of the events giving rise to this claim occurred in this District.

## FACTUAL BACKGROUND

**A.** *The AEU Lawsuit*

11. On November 2, 2017, the Secretary of Labor filed suit against the AEU Benefits, LLC and various entities in *Acosta v. AEU Benefits, LLC, et al.*, Case No. 1:17-cv-07931 ("the DOL Action").

12. On November 3, 2017, the Court in the DOL Action ordered that RMI be appointed as independent fiduciary to the AEU Plan and Participating Plans.

13. On December 13, 2017, the Court in the DOL Action entered a preliminary injunction ordering that RMI serve as successor Trustee and Plan Administrator of the AEU Plan and Participating Plans.

14. RMI filed its original complaint in the AEU Lawsuit on February 26, 2019 and an Amended Complaint on April 15, 2019 ("the Underlying Complaint"). A true and correct copy of the Underlying Complaint is attached hereto as Exhibit A.

15. The Underlying Complaint alleged liability against various persons and entities, including HRB and Sbarra, in connection with a failed health benefits plan named AEU Holdings, LLC Employee Benefit Plan.

16. Defendants to the AEU Lawsuit, including HRB and Sbarra, allegedly were brokers who marketed and sold the AEU Plan to employer groups under producer agreements with the Plan's sponsor, AEU Benefits, LLC, and its principle aggregator, Black Wolf Consulting, Inc.

17. Under the AEU Program, the underlying defendants, including HRB and Sbarra, allegedly were to set up voluntary employees' benefits association ("VEBA") trusts for each employer group client pursuant to Section 501(c)(9) of the Internal Revenue Code. The Underlying Complaint alleges that the VEBA trust would be specific to each employer group and allow each employer group to provide to its employees a health benefits plan governed by ERISA.

18. Defendants to the AEU Lawsuit, including HRB and Sbarra, allegedly held contractual duties to deliver required Program documents to their client employer groups, ensure required documentation was completed and submitted, comply with the Program's underwriting standards, and assure that employer contributions were handled properly.

19. Defendants to the AEU Lawsuit, including HRB and Sbarra, allegedly owed a duty of reasonable care to the AEU Program and the Participating Plans placed in the AEU Program.

20. Defendants to the AEU Lawsuit, including HRB and Sbarra, allegedly acted improperly, causing the AEU Program to not operate in accordance with its intended structure and causing the AEU Program to fail.

21. HRB's and Sbarra's alleged conduct includes, but is not limited to, the following acts and omissions:

    a. Failing to ensure proper documentation with employer groups, such that the Participating Plans were not established as approved VEBA trusts.

    b. ERISA requirements were not met.

    c. Employer contributions were commingled and pooled and not kept separate by Participating Plan.

    d. No actual VEBA trusts existed and each Defendant should not have permitted its clients to participate in the Program or make contributions to it until these requirements were met.

    e. Defendants improperly marketed the AEU Program, failing to inform employer groups that the Program was not insurance but a "Self-Funded Health Benefits Plan" and that the employers and employees would

have to fund any claims of that Participating Plan not covered by contributions or pay all of the trust's incurred claims.

f.  Defendants failed to adhere to required underwriting standards, including placing multiple employer groups into one Participating Plan, which created Multiple Employer Welfare Arrangements ("MEWA") subject to state insurance laws and regulations with which the AEU Program was not designed to comply.

22. The Underlying Complaint alleges program losses caused by the underlying defendants' conduct in the tens of millions of dollars.

23. Count I to the Underlying Complaint alleges breach of contract against the underlying defendants, including HRB and Sbarra, for failure to perform their duties as broker for the AEU Program.

24. Count II of the Underlying Complaint alleges negligence against the underlying defendants, including HRB and Sbarra, for breaching their duty of care to the AEU Program.

**B.**  *The Policy*

25. Everest issued Professional Liability (Financial Services) Master Policy No. FL5EO00005-181 to First Named Insured "Financial Services Professional Liability Risk Purchasing Group, Inc., in care of Arthur J. Gallagher RPG" for the Policy Period of October 1, 2018 to October 1, 2019 ("the Everest Policy"). A true and correct copy of the Everest Policy is attached hereto as Exhibit B.

26. Everest issued a Certificate of Liability Insurance to Sbarra adding her as a "Named Insured" to the Everest Policy, indicating Sbarra elected and purchased "Coverage A – acting as a Life Insurance Agent", with limits of $1,000,000 each wrongful act. A true and correct copy of the Certificate of Insurance is attached hereto as Exhibit C.

27. The Everest Policy contains form number 2-14179 EFI 06 00 10 14, which contains relevant insuring agreements, definitions, exclusions, and conditions to the Policy.

28. Section I – Insuring Agreements of the Everest Policy states in relevant part:

The Insurer will pay on behalf of the **Insured** all sums in excess of the applicable retention subject to the applicable Limit of Liability as stated in the Certificate, that the **Insured** shall become legally obligated to pay as **Damages** for a **Wrongful Act**, but only if the **Wrongful Act**, or the first in the series of continuous, repeated or **Interrelated Wrongful Acts**:

1. arises solely out of or in connection with **Financial Services** for a **Client** of a **Named Insured**;

2. occurs during the **Coverage Period** for both the **Insured** and the individual, if any, for whose acts the **Named Insured** is legally responsible; and

3. results in a **Written Claim** which is first made against the **Insured** and presented to the Insurer during the Insured's Policy Period; provided, in case of cancellation or non-renewal of this policy with respect to an **Insured**, if a **Written Claim** is first made against that **Insured** during the last fifteen days of that **Insured's** Policy Period, that **Written Claim** may be presented to the Insurer no later than fifteen days immediately following the effective date of such cancellation or nonrenewal if, as a condition precedent to that right, that **Insured** has not procured or does not have available to him/her/it other insurance which applies to said **Written Claim** or which would apply in the absence of this policy.

29. Section III – Definitions of the Everest Policy states in relevant part:

6. **Client** means an individual or entity which is a member of the general public and which, as the direct or ultimate consumer, uses the **Financial Services** of a **Named Insured**. It does not include, without limitation, any individual or entity who/which buys with the intent of selling to others or sells with the intent that the buyer sell to others or which provides services as part of a chain of services to the ultimate consumer.

* * *

15. **Financial Services** means the provision of the following businesses or activities provided by the **Named Insured**, however, solely if such coverage is reflected as being elected and purchased on the Certificate issued to the **Named Insured** by the **First Named Insured**:

    Coverage a) acting as a **Life Insurance Agent** solely with respect to the sale of fixed life, accident, health, disability and long term care insurance products and fixed annuity products; and (2) **Employee Benefit Plan Administration** (other than when in connection with self-insured plans).

6

Coverage b) acting as a **Life Insurance Agent** and/or **Registered Representative** solely with respect to (1) the sale of fixed and variable life, accident, health and disability insurance products, long term care insurance products, fixed and variable annuities and mutual funds, (2) providing brokerage services for individual retirement accounts, Keogh retirement plans and employee benefit plans (other than multiple employer or multiemployer welfare arrangements), and (3) **Employee Benefit Plan Administration** (other than when in connection with self-insured plans).

Including coverage for acts as a **Financial Planner**, but only for **Financial Planning Services** incidental to either a) or b) above, subject to the option selected and purchased by the Named Insured.

With respect to Coverage a) and b) above, **Employee Benefit Plan Administration** means with respect to life, accident and health insurance products; 1) the consultation with participants in an employee benefit plan in order to explain the provisions of such plan, and (2) the handling of day-to-day ministerial functions required by such plan, including but not limited to the enrollment of participants, record keeping and the filing of reports with government agencies. The **Administration of Employee Benefit Plans** does not include third party claims administration or the selection, recommendation or oversight of any third party claims administrator.

\* \* \*

30. **Suit** means a civil legal proceeding, including arbitration, brought against the **Insured** seeking monetary **Damages**.

    **Suit** does not include: criminal legal proceedings; legal proceedings, or that part of legal proceeding, seeking equitable relief (including, without limitation, injunctions or specific performance); or legal proceedings brought by a governmental or regulatory entity including, without limitation, those seeking fines, penalties, taxes or suspension or revocation of license, registration, membership or other operating authority.

\* \* \*

32. **Written Claim** means a written notice or demand, including **Suit**, signed by or on behalf of a **Client** of a **Named Insured** who is alleged to have suffered monetary loss as a result of or in conjunction with the provision of **Financial Services**, by a **Named Insured** and asserting that the **Insured** is liable for said monetary loss. A report made to the Insurer by an **Insured** for any reason, including, without limitation, loss control or risk management purposes, shall not be considered a **Written Claim**.

\* \* \*

30.     Section VI – Exclusions of the Everest Policy states in relevant part:

7

The insurance afforded by this policy, including any obligation to defend or pay **Defense Costs**, does not apply to the following.

* * *

2. **Contractual Liability/Promises/Guarantees**

   The Insurer will not cover claims arising out of any actual or alleged:

   a. liability of others assumed by an **Insured** under any contract or agreement; provided, however, that this paragraph shall not apply to the extent that the liability would attach to an **Insured** in the absence of such contract or agreement; or

   b. making or stating of any promises or guarantees as to interest rates or fluctuations in interest rates, the market value of any investment or insurance product, or future premium payments.

* * *

8. **Insolvency or Bankruptcy**

   The Insurer will not cover claims which arise out of the actual or alleged insolvency, receivership, bankruptcy, liquidation, reorganization or financial inability to pay of any: **Insured**; bank or banking firm; trust, title or escrow company; law firm; **Broker** or **Dealer**; clearing agency; insurance company or reinsurer; or pool, syndicate, association or other combination formed for the purpose of providing insurance or reinsurance. Provided, however, this exclusion shall not apply to claims based upon, arising out of, due to or involving, directly or indirectly, the insolvency, receivership, bankruptcy, liquidation, or financial inability to pay, or suspension of payment by, any insurance company rated B+ or better as per A.M. Best Ratings as of the time of placement of such insurance coverage or bond.

* * *

10. **Non Clients**

    The Insurer will not cover claims of a claimant who is neither a Client of a Named Insured, nor the executor, administrator, guardian or other legal representative of such Client. This includes, without limitation, any individual or entity who/which buys with the intent of selling to others or sells with the intent that the buyer sell to others or which provides services as part of a chain of services to the ultimate consumer including, without limitation: a Broker or Dealer which is not buying, selling or trading as a principal for its own account; investment bankers; mutual funds; limited partnerships; banks, savings and loan companies and other financial institutions; transfer agents; clearing agencies; the SPIC; custodians; and

8

investment adviser entities, such as companies providing asset allocation models or services to Registered Investment Advisers.

* * *

12. **Excluded Products**

The Insurer will not cover claims which arise out of or are in any way related to the purchase, sale, servicing, recommendation:

a. of any insurance product or **Securities** not specifically referenced within the definition of **Financial Services**;

b. or **Employee Benefit Plan Administration** of any multiple employer or multiemployer welfare arrangements, 412(i) plans or self-insured plan;

31. HRB and Sbarra sought insurance coverage for the AEU Lawsuit under the Everest Policy.

32. On May 24, 2019, Everest declined coverage to HRB and Sbarra in response to the AEU Lawsuit.

## COUNT I – DECLARATORY JUDGMENT
### Insuring Agreement Not Satisfied

33. Everest incorporates and restates its allegations set forth in paragraphs 1 through 32 as if fully set forth herein.

34. An actual case or controversy exists between the parties concerning coverage under the Everest Policy for the AEU Lawsuit.

35. The Everest Policy's insuring agreement only affords coverage for Wrongful Acts that arise out of in connection with "Financial Services" for a "Client" of HRB/Sbarra. The definition of "Financial Services" is limited under Sbarra's Certificate of Insurance to "Coverage A), acting as a Life Insurance Agent solely with respect to the sale of fixed life, accident, health, disability and long term care insurance products and fixed annuity products; and (2) Employee Benefit Plan Administration (other than when in connection with self-insured plans.)"

9

36. To the extent the AEU Lawsuit does not arise out of covered Financial Services, as defined in the Everest Policy, there is no coverage.

37. Accordingly, the AEU Lawsuit does not allege Wrongful Acts arising out of covered Financial Services.

38. The Everest Policy's insuring agreement also only affords coverage for Written Claims, which are limited by definition to a written notice or demand signed by or on behalf of a "Client" of HRB/Sbarra. The definition of "Client" is limited to a member of the general public that is the direct or ultimate consumer of Financial Services, and does not include entities that sell services as part of a chain of services to the ultimate consumer.

39. The AEU Lawsuit is brought by RMI in its capacity as Independent Fiduciary of the AEU Plan and Participating Plans, which are not direct or ultimate consumers of Financial Services. Instead, the AEU Plan and Participating Plans are employee benefit plans that were marketed and sold services through brokers such as HRB/Sbarra to its clients.

40. Accordingly, RMI does not meet the definition of "Client" and the AEU Lawsuit does not meet the definition of a covered "Written Claim" under the Everest Policy.

41. Everest therefore seeks a judicial declaration pursuant to U.S.C. §§ 2201 and 2202 that it has no duty to defend or indemnify HRB or Sbarra in connection with the AEU Lawsuit.

## COUNT II – DECLARATORY JUDGMENT
### Exclusion 2

42. Everest incorporates and restates its allegations set forth in paragraphs 1 through 32 as if fully set forth herein.

43. An actual case or controversy exists between the parties concerning coverage under the Everest Policy for the AEU Lawsuit.

44. Exclusion 2 to the Everest Policy precludes coverage for any claims arising out of liability assumed by HRB/Sbarra under any contract or agreement.

45. The AEU Lawsuit alleges liability on behalf of HRB/Sbarra arising out of their performance of an oral contract with AEU to market and sell AEU Program products to employer group clients, including breaches of contractually created duties owed to AEU.

46. Accordingly, the AEU Lawsuit arises out of liability assumed by HRB/Sbarra under a contract or agreement.

47. Everest therefore seeks a judicial declaration pursuant to U.S.C. §§ 2201 and 2202 that it has no duty to defend or indemnify HRB or Sbarra in connection with the AEU Lawsuit.

## COUNT III – DECLARATORY JUDGMENT
### Exclusion 8

48. Everest incorporates and restates its allegations set forth in paragraphs 1 through 32 as if fully set forth herein.

49. An actual case or controversy exists between the parties concerning coverage under the Everest Policy for the AEU Lawsuit.

50. Exclusion 8 to the Everest Policy precludes coverage for any claims arising out of insolvency or financial inability to pay by any trust, pool, syndicate, association or other combination formed for the purpose of providing insurance or reinsurance.

51. The AEU Lawsuit alleges damages as a result of the AEU Program's failure and inability to pay claims under trust or self-funded health benefit plans.

52. Accordingly, the AEU Lawsuit arises from the financial insolvency or inability to pay of a trust or benefit plan.

53. Everest therefore seeks a judicial declaration pursuant to U.S.C. §§ 2201 and 2202 that it has no duty to defend or indemnify HRB or Sbarra in connection with the AEU Lawsuit.

11

## COUNT IV – DECLARATORY JUDGMENT
### Exclusion 10

54. Everest incorporates and restates its allegations set forth in paragraphs 1 through 32 as if fully set forth herein.

55. An actual case or controversy exists between the parties concerning coverage under the Everest Policy for the AEU Lawsuit.

56. Exclusion 10 to the Everest Policy precludes coverage for claims of a claimant who is not a "Client" of HRB/Sbarra.

57. The AEU Lawsuit is brought by RMI in its capacity as Independent Fiduciary of AEU, which is not a direct or ultimate consumer of Financial Services, and instead markets and sells employee benefit services through brokers such as HRB/Sbarra.

58. Accordingly, RMI is not a "Client" of HRB/Sbarra under the Everest Policy.

59. Everest therefore seeks a judicial declaration pursuant to U.S.C. §§ 2201 and 2202 that it has no duty to defend or indemnify HRB or Sbarra in connection with the AEU Lawsuit.

## COUNT V – DECLARATORY JUDGMENT
### Exclusion 12

60. Everest incorporates and restates its allegations set forth in paragraphs 1 through 32 as if fully set forth herein.

61. An actual case or controversy exists between the parties concerning coverage under the Everest Policy for the AEU Lawsuit.

62. Exclusion 12 to the Everest Policy precludes coverage for claims which arise out of or are in any way related to the purchase, sale, servicing, or recommendation of Employee Benefit Plan Administration.

63. The AEU Lawsuit alleges liability on behalf of HRB/Sbarra arising out of the purchase, sale, servicing, or recommendation of the AEU Plan, which is an Employee Benefit Plan Administration.

64. Accordingly, the AEU Lawsuit arises out of obligations of HRB/Sbarra in connection with Employee Benefit Plan Administration.

65. Everest therefore seeks a judicial declaration pursuant to U.S.C. §§ 2201 and 2202 that it has no duty to defend or indemnify HRB or Sbarra in connection with the AEU Lawsuit.

**COUNT VI – DECLARATORY JUDGMENT**
**Other Policy Terms, Conditions and Exclusions**

66. Everest incorporates and restates its allegations set forth in paragraphs 1 through 32 as if fully set forth herein.

67. An actual case or controversy exists between the parties concerning coverage under the Everest Policy for the AEU Lawsuit.

68. Other terms, conditions and exclusions of the Everest Policy may bar or limit coverage and Everest reserves the right to rely on such terms, conditions and exclusion as appropriate given information developed through discovery in this matter.

69. Everest therefore seeks a judicial declaration pursuant to U.S.C. §§ 2201 and 2202 that it has no duty to defend or indemnify HRB or Sbarra in connection with the AEU Lawsuit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Everest National Insurance Company, respectfully requests that this Court find in their favor and enter judgment as follows:

(a) Judicial declaration that Everest has no duty to defend HRB or Sbarra under Policy No. FL5EO00005-181 in connection with the AEU Lawsuit;

(b) Judicial declaration that Everest has no duty to indemnify HRB or Sbarra under Policy No. FL5EO00005-181 in connection with the AEU Lawsuit;

  (c) Any further relief that this Court deems just and equitable under the circumstances.

Dated: July 2, 2019            *Respectfully Submitted,*

                **WALKER WILCOX MATOUSEK LLP**

           By: */s/ Neil E. Holmen*
              Attorneys for Everest National Insurance Company

Neil E. Holmen (*nholmen@walkerwilcox.com*)
Fred L. Alvarez (*falvarez@walkerwilcox.com*)
Kevin A. Lahm (*klahm@wwmlawyers.com*)
WALKER WILCOX MATOUSEK LLP
One North Franklin, Ste. 3200
Chicago, Illinois 60606
(312) 244-6700

14